IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:23-cr-84 |
| ) | |
| CLESHAUN A. COX, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR ACCEPTANCE OF RESPONSIBILITY DECREASE**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Kristen Clarke, Assistant Attorney General, Civil Rights Division, E. Rebecca Gantt, Assistant U.S. Attorney, and Kathryn Gilbert, Special Litigation Counsel, Civil Rights Division, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

The PSR determined the defendant's total offense level as 43 and criminal history category as I, resulting in an advisory guidelines range of life. There are no unresolved objections to the PSR. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and the previously-entered plea agreement, which the Court accepted, the available sentence is no less than 15 years and no more than 20 years.

For the reasons described below, the government recommends that the Court impose a sentence of imprisonment of 20 years, which is sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

I. **Procedural Background**

On July 14, 2023, the defendant waived indictment and pleaded guilty to a single-count criminal information charging him with deprivation of rights under color of law, in violation of 18 U.S.C. § 242. ECF Nos. 2 & 10. In the plea agreement, the parties agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence within the range of 15 to 20 years of imprisonment was an appropriate disposition of the case, and that the Court would be bound by the same should it accept the plea agreement. ECF No. 10 ¶ 5. The Court accepted the plea agreement, adjudged the defendant guilty, and set the matter for sentencing. ECF No. 8. The Court remanded the defendant, who had been transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum*. ECF Nos. 5, 8, & 14.[1]

On October 14, 2023, the U.S. Probation Office filed a PSR which calculated the total offense level as 43 and the criminal history category as I, resulting in a guidelines range of life. ECF No. 15. There were no objections from either party. On November 6, 2023, the U.S. Probation Office filed its final sentencing PSR which maintained the same calculations. ECF No. 16.

II. **Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility**

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. USSG § 3E1.1(b). The PSR has properly applied a two-

---

[1] The pretrial report noted that the defendant's estimated release date from state custody was November 2, 2023. ECF No. 6 at 4. The Virginia Department of Corrections Inmate Locator no longer identifies the defendant as serving an active sentence. Virginia Department of Corrections Inmate Locator, https://vadoc.virginia.gov/general-public/inmate-locator/ (last visited Nov. 13, 2023).

level decrease in the offense level for acceptance of responsibility under USSG § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation. PSR ¶ 28.

### III. Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351–52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects

those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

## IV. The Statutory Sentencing Factors

### A. The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

In the early morning hours of Memorial Day in 2019, the defendant was on duty as a police officer in Portsmouth. He and a more senior officer responded to a noise complaint at a parking lot in a residential area. They encountered 17-year-old Jane Doe (identified as Victim 1 in the Statement of Facts), who was sitting in the driver's seat of a parked car with some friends. The senior officer determined Jane Doe had not violated any laws other than being out after curfew and told her to drive home, which she began to do with her 18-year-old friend who was in the passenger seat. At that encounter, the defendant learned that Jane Doe was only 17 years old.

Unbeknownst to the senior officer, the defendant followed Jane Doe and her friend in his police vehicle as they drove home.[2] When they stopped for gas, he activated his blue lights (but did not activate his body-worn camera) and threatened to ticket her with numerous minor offenses. He did so even though the senior officer had already determined to send Jane Doe on her way and that she had not violated any laws other than being out past curfew. Instead, and as the defendant later admitted, the defendant's true intent was not to enforce the laws in his duty as a police officer, but to coerce Jane Doe into having sex with him.

After leaving the gas station, Jane Doe drove to her own home, with the defendant still following them. When Jane Doe and her friend attempted to stay there together, the defendant directed Jane Doe to drive the friend to her own house, thereby ensuring Jane Doe would be alone

---

[2] In an interview with the FBI, the defendant denied following her on purpose and said he was instead going to get an audio cord so he could use his police car's speaker system to listen to the trailer for the new Godzilla movie. **Exhibit 1** (interview of defendant by the FBI on April 17, 2023), at 00:06:05 and 00:21:45.

4

so he could carry out his ultimate plan. Once she had dropped off her friend, the defendant directed Jane Doe to drive to another parking lot. There, he offered her a "deal" of three different sex acts, in exchange for which he offered to not ticket her. Jane Doe stated she did not want to engage in any sex acts. Because she feared the defendant and believed she had no other choice, she got into his car.

He drove her to the desolate and dark area depicted in **Exhibit 3**, where he vaginally penetrated Jane Doe without her consent. Although he well knew that she had a condom, having seen one in her purse after she consented to its search at the initial encounter in the parking lot, he chose not to use one. Ex. 1 at 1:02:59, **Exhibit 2** (interview of Jane Doe by the Portsmouth Police Department on May 27, 2019) at 00:13:33. As more specifically described in paragraph 10 of the PSR, he caused bodily injury to Jane Doe.

Jane Doe immediately reported the assault. *See generally* Ex. 2. The defendant was also interviewed by detectives from the Portsmouth Police Department. He made numerous false statements, including falsely denying knowing Jane Doe's true age, and falsely claiming that Jane Doe offered to "top him off," *i.e.*, offered oral sex. Ex. 1 at 00:41:40. The defendant was arrested the following day.

B. <u>The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))</u>

The defendant is 31 years old and was born in Norfolk. His parents were married, and separated when he was 6 years old. After that, he lived with his mother and his father still took an active role in his life. The defendant reports that he was provided with basic necessities and that there was no physical or mental abuse during his childhood, though he disclosed other abuse as documented in the PSR. PSR ¶ 37. The defendant has a younger brother who lives in Chesapeake. His mother also lives in Chesapeake; his father passed away in 2016. The defendant married in

2018 and has two children from that marriage, now ages 3 and 4. He and his wife finalized their divorce in 2022.

The defendant reports graduating from high school in Norfolk in 2011. He worked as a private security officer from 2012 to 2016. From 2016 to 2018, the defendant worked as a correctional officer at a Virginia Department of Corrections facility. In February 2018, the defendant was hired as a police officer in the Portsmouth Police Department. He resigned in July 2019, after his state arrest for the instant offense.

The defendant reports taking medicine for high blood pressure. He has no history of psychological or psychiatric treatment but believes he may have depression and anxiety. He does not have a history of substance abuse.

Regarding criminal history, on May 28, 2019 the defendant was arrested on state charges for carnal knowledge of detained individual and abduction, arising from the instant offense.[3] He pleaded guilty and in October 2021 was sentenced to serve 5 years of non-suspended time. As noted above, he has completed his state sentence; he served a total of approximately 4.5 years in state custody.

---

[3] The United States' successive prosecution for the same conduct is governed by the Department of Justice's "Petite policy," which generally precludes such prosecutions unless three prerequisites are satisfied: "first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact." Justice Manual § 9.2-031, *available at* https://www.justice.gov/jm/jm-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals#9-2.031.

C. <u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))</u>

The government's recommended sentence reflects the extraordinarily aggravated nature of his crime. At a threshold level, he targeted a minor victim for violent sexual assault, deeply traumatizing a vulnerable teenager for nothing other than his own sexual gratification. At each step, the defendant took actions designed to make the teenaged Jane Doe feel even more vulnerable, including separating her from her friend so that she would be alone and forcing her to accompany him to an isolated location where no one would see or hear her struggle. Such a calculated attack would, even absent any other factors, merit significant punishment, but the defendant also egregiously abused the immense trust and power given to him by the public as a law enforcement office. The defendant repeatedly reminded the victim of the power he held over her: he used his official vehicle to follow her, suggesting that she could not escape him; he used his lights to effect a baseless traffic stop, suggesting that his authority was vast; and he ordered her to drive to various locations and ultimately to get into his vehicle, suggesting that he had the power to dictate her movements. The defendant's targeting of a minor victim and his extensive abuse of his authority render his offense even more horrific than the grievousness inherent to the offense and heightens the need for a sentence that will provide just punishment.

The one Victim Impact Statement received to date, written by the victim's mother, shows the absolutely devastating impact he has left in the wake of his completely selfish and senseless crime. *See also* Ex. 2-1 (clip of full interview (Ex. 2), in which Jane Doe sobs as she describes the sexual assault). A consecutive sentence at the top end of the agreed-upon range would reflect the seriousness of the offense and provide just punishment. Such a sentence would also promote respect for the law by recognizing the defendant's extensive disrespect for the law, particularly as one sworn to uphold it.

7

D.  The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

The government's requested sentence is necessary to specifically deter the defendant and to protect the public from further crimes. While the defendant has now pleaded guilty pre-indictment and accepted an additional sentence of incarceration of at least 15 years, his recent FBI interview in April 2023 shows that he still does not accept the gravity and true nature of his crime. On April 17, 2023—after the defendant had already served nearly four years in custody for his crime and presumably, had many hours to think about what he had done—he consented to a voluntary interview with FBI Special Agents at the Southampton County Jail.

After explaining why they were there and advising the defendant of his *Miranda* rights, agents opened the floor to the defendant to describe what had happened in his own words. That recitation is contained in Exhibit 1-1, a clip of the full interview. The defendant immediately began by offering agents the "reason" for his conduct: he told agents that he and his wife were having a fight and she had refused to had sex with him for a week and a half. During that recitation, he also called Jane Doe the "alleged victim." Throughout the whole interview, while the defendant stated what he did was not right and expressed regret for embarrassing law enforcement, he never once expressed remorse for what trauma he might have caused the victim or made any effort to understand the impact of his actions on her. *See generally* Ex. 1. Instead, he repeatedly accused Jane Doe of lying. And although he acknowledged some of his numerous previous false statements to the Portsmouth Police Department, he also made additional statements that he now admits are false, such as denying on multiple occasions that he offered Jane Doe oral, vaginal, or anal sex. *Compare* Ex. 1 at 00:08:10, 00:44:10 *with* Statement of Facts ¶ 11.

After four years in prison, that defendant has such a continued lack of any empathy for Jane Doe and justifies his horrendous conduct as a result of his wife denying him sex shows the need for specific deterrence.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant may benefit from mental health treatment as he has indicated he believes he has mental health conditions. He would also benefit from post-secondary education and vocational opportunities that would assist him in obtaining employment following his release from custody.

F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence of imprisonment for the defendant's crime of conviction is up to a life term of imprisonment.[4] 18 U.S.C. § 242. A term of supervised release may be imposed for up to 5 years. 18 U.S.C. § 3583(b)(1). Probation is not statutorily available. 18 U.S.C. § 3561(c)(1).

G. The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

The defendant is the sole defendant in this case. The parties' agreed-upon range, including the government's recommended sentence, represents a downward variance from the advisory guidelines range in recognition of the value of sparing the victim from having to testify at a public trial, accepting responsibility pre-indictment, and conserving prosecutorial and judicial resources. The government recognizes that sentences outside of the advisory guidelines range may create unwarranted disparities with similarly-situated defendants. *See Gall v. United States*, 552 U.S. 38,

---

[4] While the statute also by its terms authorizes the death penalty for the defendant's conduct, under Supreme Court precedent such a penalty is unconstitutional for sexual crimes against a minor that do not result in death. *Kennedy v. Louisiana*, 554 U.S. 407 (2008).

54 (2007) (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"); *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) ("The purpose of the sentencing guidelines is to eliminate disparities among sentences nationwide." (internal quotation and citation omitted)). However, given the other § 3553(a) factors discussed herein, the defendant's prior state sentence, as well as the defendant's willingness to plead to a criminal information, the government believes its requested sentence will not create unwarranted disparities.

The government recognizes that "[t]he requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court." *United States v. Sueiro*, 59 F.4th 132, 142 (4th Cir. 2023). However, the government is aware of comparable color of law cases reaching similar results in other jurisdictions: *United States v. Osborne*, No. 2:20-cr-00152 (S.D.W. Va. 2022) (pursuant to a Rule 11(C)(1)(c) agreement, defendant who was a firefighter and police officer sentenced to a 14-year term of imprisonment for one count of violating 18 U.S.C. § 242 by sexually assaulting a minor victim); *United States v. Logan*, No. 1:19-cr-00125 (E.D. Tenn. 2020) (pursuant to Rule 11(C)(1)(c) agreement, officer sentenced to a 20-year term of imprisonment for two counts of violating 18 U.S.C. § 242 by sexually assaulting victims).

The instant offense is in crucial respects more egregious than the *Logan* case and other comparable prosecutions involving adult victims, because of the victim's age and vulnerability. As reflected in Jane Doe's mother's victim impact statement, the impact of the offense was more significant because of the developmental age at which it occurred. The victim was a "different child" prior to the assault and is now, as her mother explained, "frozen in time." The offense is also in some respects more egregious than other comparable prosecutions involving minor victims,

in that the assault was forcible and penetrative. *E.g. United States v. Rodney Vicknair*, Case No. 2:22-cr-212 (E.D. La. March 14, 2023). The defendant also abused his authority more extensively and flagrantly than other similarly situated defendants. *E.g.*, *Osborne*, No. 2:20-cr-00152 (police officer and firefighter sexually assaulted junior firefighter in bunk room of fire station). For these reasons, a sentence at the highest end of the agreed-upon range is appropriate and would avoid unwarranted sentencing disparities.

H. <u>The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))</u>

In his plea agreement, the defendant agreed that restitution was mandatory, and to the entry of a restitution order for the full amount of the victim's losses. ECF No. 10 ¶ 10. The defendant further agreed that pursuant to 18 U.S.C. § 3663(a)(3), a victim of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct is a victim within the meaning of 18 U.S.C. § 2259(c) and are entitled to restitution. *Id*. As of the time of this filing, the government has not received a restitution request from the individual identified as Victim 1 in the Statement of Facts and Plea Agreement.

**V.     Supervised Release Conditions**

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions, as well as recommended

special conditions, on pages 14 through 17 of the PSR. The government requests that the Court impose all of those conditions.

## VI. Conclusion

For the reasons stated above, the government submits that a sentence of imprisonment of 20 years would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By:     /s/
    E. Rebecca Gantt
    Assistant United States Attorney
    VSB No. 83180
    101 West Main Street, Suite 8000
    Norfolk, Virginia 23510
    Tel. - 757-441-6350
    Fax - 757-441-6689
    E-mail Address – rebecca.gantt@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General

By:     /s/
    Kathryn E. Gilbert
    Special Litigation Counsel
    Civil Rights Division, Criminal Section
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Washington, DC 20530
    Tel. - 202-616-2430
    Fax - 202-514-6588
    E-mail Address – kathryn.Gilbert@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 15, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

    I further certify that on November 15, 2023, I will send an electronic copy of the foregoing to the following:

                                  Jeffrey A. Noll
                       Senior United States Probation Officer

                                                  /s/
                            E. Rebecca Gantt
                            Assistant United States Attorney
                            101 West Main Street, Suite 8000
                            Norfolk, Virginia 23510
                            Tel. - 757-441-6350
                            Fax - 757-441-6689
                            E-mail Address – rebecca.gantt@usdoj.gov